UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FIDELITY CO-OPERATIVE BANK, Individually and as assignee of MATTHEW KNOWLES and SONDRA KNOWLES, Plaintiffs v. NOVA CASUALTY COMPANY, Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. NO. 10-10519-TSH |

**FINDINGS AND ORDER ON MOTION FOR SUMMARY JUDGMENT OF DEFENDANT NOVA CASUALTY COMPANY (Docket No. 26) and FIDELITY COOPERATIVE BANK'S MOTION FOR SUMMARY JUDGMENT (Docket No. 27)**
April 11, 2012

**HILLMAN, M.J.**

## Introduction

Fidelity Cooperative Bank ("Fidelity") has made claims to Nova Casualty Company ("Nova") for payment of property damage and business interruption losses that they claim their assignor sustained. Nova has denied that the losses were covered by their insurance policy.[1] Both parties have moved for summary judgment on the issue of whether the insurance contract provides coverage for the losses. For the reasons set forth below, Nova's motion for summary judgment is *allowed* and Fidelity's motion for summary judgment is *denied*.

## Findings of Fact

---

[1] A copy of the Nova Casualty Company Commercial Capitol Assets Program Policy in effect at the time of the losses is attached to the *Mot. For Sum. J. Of Def. Nova Casualty Co.* (Docket No. 26), at *Ex. B* (Docket No. 26-6)("*Nova Policy*") .

*Damages and Losses*

On September 6, 2008, a severe tropical rainstorm deposited a large amount of water onto the roof of a building owned by Matthew and Sandra Knowles at 46-50 High Street in Clinton, Massachusetts. The building was a five story, mixed commercial and residential use with two storefronts at street level and sixteen residential rental units above. The volume of the rain was so great that the roof drain was unable to remove the water, which pooled on the flat roof and entered the building through aged and porous metal and glass skylights. That water caused over $500,000.00 in damage to the interior of the building and was so catastrophic that the Town of Clinton ordered the building closed to tenants. The building was fully rented and the loss of tenant income led the Knowles to default on their mortgage to Fidelity who, in turn took title to the property through a deed in lieu of foreclosure. Three months after the water loss the vacant property sustained damages from theft and vandalism.

*Nova's Denial Of Coverage[2]*

Nova denied the claim for reimbursement for the interior water damage citing to **D. Limitation 1.c.** ("Limitation D.1.c.", or the "rain limitation") and **C. Exclusion 3.c** ("Exclusion C.3.c., or the "faulty workmanship exclusion") of the *Nova Policy*. Boiled down to its essential parts, the rain limitation states that there is no coverage for damage to the interior of: "the building or structure, caused by or resulting from rain . . .unless . . . the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain… enters". Nova denied coverage based upon the rain limitation claiming that the rain water

---

[2] The text of the relevant *Nova Policy* provisions are set forth in *Appendix A* attached hereto.

entered the interior of the premises because of the backed up roof drain and not from damaged roof or walls. *See Nova Policy*, at p. 36.

Nova also denied coverage based on the faulty workmanship exclusion which, essentially, excludes coverage for: "loss or damage caused by ... [f]aulty, inadequate or defective ... workmanship, repair, construction, renovation or remodeling ... [m]aterials used in repair, construction, renovation or remodeling; or ... [m]aintenance of part or all of any property on or off your 'covered locations'". *Id.,* at p. 36. In support of its contention that the faulty workmanship exclusion applies, Nova maintains that the roof drain "was covered by a crudely fashioned strainer made from a section of lead flashing" which, coupled with the single 2.5 inch roof drain, were inadequate to handle the water deposited from the rain storm.

Finally, because the building had been vacant for more than sixty days, Nova denied coverage under **H. Loss Conditions 6.b.**, *Id.,* at pp. 42-43, for the theft and vandalism that allegedly occurred on December 4, 2008.

## Discussion

Fidelity's five count complaint seeks a declaration that the physical losses suffered by the property were "covered cause(s) of loss" as that term is used in the insurance policy (Count 1), and that the loss of business income was similarly covered under the policy (Count 2). Fidelity also seeks monetary damage from Nova for breach of contract (Count 3), negligence (Count 4), and violations of Mass.Gen.L, ch. 93A ("Chapter 93A"), the Massachusetts consumer protection statute (Count 5). Fidelity has moved for summary judgment on Counts 1 and 2 only. Nova has moved for summary judgment on all counts.

*Standard of Review*

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (internal citation omitted).

The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Sensing*, 575 F.3d at 153. "Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial." *Id.* (citing *Carroll*, 294 F.3d at 236). These facts must not be merely allegations or denials of the moving party's pleadings. *Id.* Both "[c]onclusory allegations [and] improbable inferences" are insufficient to overcome summary judgment. *Sensing*, 575 F.3d at 153 (citing *Carroll*, 294 F. 3d at 236-37 (internal quotations omitted). "The test is whether, as to each essential element, there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Sensing* 575 F.3d at 153 (citations omitted).

*Interpretation of Insurance Policy*

Massachusetts law provides that interpretation of an insurance policy is a question of law for the court. The court applies general rules of contract interpretation, and looks first to the

4

actual policy language, which is "'given its plain and ordinary meaning.'" *Valley Forge Ins. Co. v. Field,* 670 F.3d 93, 2012 (1st Cir. 2012). Like all contracts, an insurance policy is to be construed according to the fair and reasonable meaning of its words. Exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured. *See Vappi & Co.,* 348 Mass. at 431-432, 204 N.E.2d at 276 (1965). Thus, where "the relevant policy provisions are plainly expressed, those provisions must be enforced according to their terms and interpreted in a manner consistent with what an objectively reasonable ensured would expect to be covered. *Vicor Corp. v. Vigilant Ins. Co.*, -- F.3d--, 2012 WL 883198, at *6 (1st Cir. 2012)(internal citation omitted).

"The insurer bears the burden of demonstrating that an exclusion exists that precludes coverage, and 'any ambiguities in the exclusion provision are strictly construed against the insurer'. Ambiguity does not exist simply because the parties disagree about the proper interpretation of a policy provision; rather, '[a]mbiguity exists when the policy language is susceptible to more than one rationale interpretation'" *Valley Forge*, 670 F.3d at -- (internal citations and citation to quoted case omitted). Doubts created by any ambiguous words or provisions are to be resolved against the insurer. *August A. Busch & Co. of Mass., Inc. v. Liberty Mut. Ins. Co.*, 339 Mass. 239, 243, 158 N.E.2d 351,354 (1959). Finally, absent Massachusetts precedent, [the court] may also seek guidance from other courts' interpretations of standard policy provisions". *Vicor Corp.*, -- F.3d--, 2012 WL 883198, at *6.

*Coverage Under the Nova Policy*

The *Nova Policy* was written in an "all risk" format which, in general, means that all direct physical damage or loss to insured property are covered so long as such damage or loss

were caused by a peril within the policy's coverage. *Fireman's Fund Ins. Co. v. Tropical Shipping and Const. Co. Ltd.*, 254 F.3d 987, 1008 (11th Cir. 2001). At the same time, an "all risk" policy is not an "all loss" policy". Thus, "all risk policies often contain express written exclusions and implied exceptions that have been developed by the courts over the years", which serve to bar coverage. *Yale University v. Cigna Ins. Co.*, 224 F.Supp.2d 402, 411(D.Conn 2002). The issue before me is whether or not the rain limitation and/or faulty workmanship exclusion apply to the loss described above.

### *Whether Limitation D.1.c. Excluded Coverage For Property Damage Because Of The "rain limitation"*

Fidelity argues that Limitation D.1.c does not preclude coverage for the property damage because: Nova voluntarily removed the applicable exclusion from the policy; the rain limitation does not preclude coverage; cases dealing with similar rain limitations have not applied in facts similar to this case; the rain limitation is ambiguous and must be construed against Nova; and the rain limitation defeats the reasonable expectations of the policy holder. Because Fidelity's claim falls within the coverage grant and it is relying on the above mentioned policy exclusions to deny coverage, the burden is on Nova to prove that the loss is plainly excluded by one of the provisions of the policy.

Fidelity cites to a line of cases which hold that when rain water collects on the ground or pools behind some obstruction, it ceases to be "rain" within the meaning of the insurance policy and becomes 'water'. This definitional distinction they argue, removes the loss from the rain limitation. They cite to the case of *Wider v. Heritage Maintenance, Inc.*, 827 N.Y.S.2d 837 (N.Y.Sup. 2007) in which the court construed language identical to that at issue in this case. In their brief, Fidelity argues that: "[t]he New York trial court ruled that the rain limitation did not

preclude coverage because the water pooling on the tarp was no longer rain." *Fidelity Coop. Bank's Mem. Of L. In Sup. Of Its Mot. For Sum.J.* (Docket No. 27-2), at p. 10. In actuality the court ruled that there was coverage for damage to the exterior of the building because the limitation only applied to damage to the interior and not because the interior damage was caused by rain water. In *Wider*, rainwater collected on several tarps which were tied to limestone finials on the exterior of the building. The weight of the rainwater on the tarps caused the finials to break sending the accumulated rainwater into the building. The insurance company denied coverage for exterior and interior damage to the building relying on the "rain limitation." The New York court discussed the difference between "rain" and "surface water" and came to the conclusion that the interior damage was caused by rain water as opposed to surface water (and thus excluded from coverage) based in part on two factors: first, the rain water that had accumulated on the tarps had not reached ground or surface, thus still retaining its rain water character; and second, the rain limitation excludes coverage for damage ". . . caused by or resulting from rain." The New York Court placed great emphasis on the term "resulting from rain" and rationalized that "if the finials broke as a result of rain, the rain limitation applies." (emphasis in original).

Fidelity's reliance on *Thorell v. Union Ins. Co.*, 242 Neb. 57 (1992) is similarly misplaced. In *Thorell* rainwater pooled behind a berm on the ground and entered the plaintiff's house through the cellar. In discussing the distinction between "rain" and "surface water" the Nebraska court, drawing on a decision from the Wyoming Supreme Court, held that: "We are persuaded by the Wyoming Supreme Court's reasoning that [i]f the water which accumulated on the ground and entered the basement window was still 'rain,' then there is either no such thing as

7

'surface water,' or 'rain' and 'surface water' are synonymous. Obviously, there is such a thing as 'surface water'-at least in the minds of the parties to the contract in which they used the term. And if the two terms are synonymous, then the exclusion provision of the policy for 'surface water' also applies to 'rain,' and there is no coverage. *Thorell*, 242 Neb. at 63, citing from *State Farm Fire and Cas. Co. v. Paulson*, 756 P.2d 764, 767-68 (Wyo. 1988).[3]

Fidelity also argues that the language of the rain limitation is ambiguous and since "exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage," such ambiguity must be construed against Nova. *Vappi & Co. v. Aetna Cas. & Sur.Co.*, 348 Mass. 427, 431-432, 204 N.E.2d 273, 276 (1965). In support of this position, they point out that the *Nova Policy* includes a specific exclusion for claims for water damage caused when a drain backs up. Nova refers to this exclusion in their papers as the "sewer/drain exclusion." That exclusion is found in section C.1.f(3) of the policy and excludes coverage for losses caused by "water or water-borne material, that backs up or overflows from a sewer, drain or sump." *Nova Policy*, at p. 33. At some point, the timing of which is unclear, that exclusion was removed from the policy by Nova through an endorsement and was not in effect at the time of the loss. *See Id.*, at p. 16. The combination of the rain limitation, and the amendatory endorsement deleting the sewer/drain exclusion creates such an ambiguity according to Fidelity.

I disagree. The circumstances surrounding the exclusion of the sewer/drain exclusion are unclear. Nonetheless, that losses caused by clogged drains may be covered under the *Nova Policy* is irrelevant in this case. The fact remains that the water pooled on the roof, thus

---

[3]The instructive benefit of these cases is mitigated by the fact that in both cases the court was dealing with insurance policies which excluded damage caused by "surface water," but which covered damage caused by "rain."

8

becoming surface water which entered the building through the eroded metal and glass skylights. That the water pooled due to a faulty or inadequate drain does not trump the surface water exclusion which bars coverage. *See B&W Heat Treating Co. v. Hartford Fire Ins. Co.*, 803 N.Y.S.2d 870 (N.Y.App.Div. 2005); *Hirschfield v. Continental Cas. Co.*, 405 S.E.2d 737 (Ga.Ct.App. 1991)(policy provides coverage for water which backs up through sewers or drains, except flood and surface waters).

The case of *Horizon v. Hartford Fire Ins. Co.*, 186 F.Supp. 1000 (2002), is instructive on the issue of ambiguity in construing language identical to the limitation language at issue here. In *Horizon*, a severe rainstorm caused extensive damage to the interior of the Plaintiff's property. Holding that the damage was caused by, or resulted from the rain storm, the court held that "under the unambiguous language of the insurance policy, the damage is excluded . . ." (emphasis supplied). The unambiguous language of an insurance exclusionary clause must be given its usual and ordinary meaning. *See Hakim v. Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 281, 675 N.E.2d 1161, 1165 (1997). While there are no Massachusetts cases deciding the issue, decisions from other jurisdictions have interpreted this language as meaning that the policy will only cover interior damage due to rain where it is shown that there is damage to the building's roof or walls. *See Aginsky v. Farmers Ins. Exchange*, 409 F.Supp.2d 1230, 1235 (D.Or. 2005) ("the policy only covers losses if the building? first sustains damage to its roof or walls"); *Victory Peach Group, Inc. v. Greater New York Mut. Ins. Co.*, 707 A.2d 1383, (N.J.Super.A.D. 1998) (resulting damage caused by entry of rain is covered where building sustains damage by "Covered Cause of Loss" to its roof). Here, there is no evidence that there was any damage to the roof through which rain entered the building. Indeed, it is undisputed that

9

rain entered the building through the skylights on the roof. I cannot find that the rain limitation language is ambiguous.

Finally, Fidelity argues that the rain limitation defeats the reasonable expectation of the policyholder. In support of this position, Fidelity again points to the deletion of the sewer/drain exclusion in the policy for losses sustained from a backed up drain. Since the loss was caused by circumstances contemplated by the removed exclusion, Fidelity maintains that it would be reasonable for the insured to believe that the risk was covered. "When construing language in an insurance policy, we 'consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'" *Atlantic Mut. Ins. Co. v. McFadden*, 413 Mass. 90, 92 (1992). Courts look to the policy as written and neither revise it or change the order of the words. *Continental Cas. Co. v. Gilbane, Bldg. Co.*, 391 Mass. 143, 147 (1984). If there is doubt, the courts are to "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered."

While I understand that an argument can be made that the inadequate roof drain was within the original exclusion, this is not an analysis that needs be undertaken. The mere absence of specific exclusions, standing alone, does not create coverage where it otherwise does not exist under the express terms of the policy. *See Commercial Union Ins. Co. v. Flagship Marine Services, Inc.*, 190 F.3d 26, 33 (2$^d$ Cir.1999) (after finding that marine insurance policy's "Tow Endorsement" was unambiguous, the Second Circuit overruled the District Court's holding that the "endorsement's silence as to non-yachts creates coverage") (citing *Advance Watch Co. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 805 (6th Cir.1996) ("[T]he absence of an exclusion cannot create coverage; the words used in the policy must themselves express an intention to provide

10

coverage for liability for the kind of occurrence or injury alleged by the claimant."); and *Continental Cas. Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297, 300 (7th Cir.1990) ("[A]n exclusion from insurance coverage cannot create coverage.")). The clear and unambiguous language of the rain limitation was in full force and effect. The removal of another potentially relevant exclusion does not automatically disqualify other applicable exclusions or limitations. It is not unreasonable that other exclusions and limitations would contemplate causes of loss that would overlap. Certainly water loss can take many forms and the policy deals with those eventualities. The contract clearly and unambiguously limits any losses resulting from rain to those situations where there is damage to exterior roof or walls through which the rain enters. Whether Limitation C.3.c. excluded coverage for property damage because of the "faulty workmanship" exclusion.

### *Whether Exclusion C.3.c., the Faulty Workmanship Exclusion, Bars Coverage*

Nova's second basis for denying coverage is that the interior water damage resulted from the negligent or inadequate design and/or construction or maintenance of the roof drain and is thus excluded from coverage under the above quoted "faulty workmanship" exclusion. More specifically, Nova maintains that:

> Based on Nova's investigation of the September 6, 2008, incident, Nova determined that the roof at the property at 50 High Street in Clinton, Massachusetts was served by a single drain with an internal diameter of approximately 2.5 inches which was covered by a crudely fashioned strainer made from a section of lead flashing. Karl Hansson, P.E., an engineering consultant from Cianci Engineering who Nova retained to examine the property gave the opinion that the single roof drain and its strainer were 'inadequate' and not in compliance with current code requirements. Peter Reynolds, P.E., a building engineer from Douglas G. Peterson & Associates, Inc., also inspected the property and determined that the 'roof membrane was not the cause of the damage but rather the obstruction of the roof drain caused the ponding of water to such a height that it flowed over the skylight curbs and entered the building.' Based on

11

> the inspections and conclusions of Mr. Hansson and Mr. Reynolds, the design and maintenance of the roof drain were faulty, inadequate and/or defective. I do not know how long this condition existed before September 6, 2008.

*Fidelity Cooperative Bank's Mot. For Sum. J.* (Docket No. 27), attachment at Docket No. 27-6 (*Def.*, *Nova Casualty Co.'s Answers To Fidelity Co-Operative Bank's Inter.*), at p. 4, Answer No. 5.

Nova makes a dual argument in support of their position that the faulty workmanship exclusion applies. They first allege that the language of exclusion C.3.c precludes coverage. They also argue that since they will only pay if the "resulting loss" is covered by the policy, the rain limitation precludes coverage even if the faulty workmanship exclusion does not apply. The faulty workmanship exclusion provides that Nova "will not pay for loss or damage caused by . . . Faulty, inadequate or defective . . . workmanship, repair, renovation." *Nova Policy*, at p. 36. "But if an excluded Cause of Loss . . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." *Id.*

While it is undisputed that the single roof drain was inadequate to remove the rain water, I am hard pressed to see how this triggers the faulty workmanship exclusion. Fidelity has cited to several cases and commentaries which posit that this exclusion is rightfully intended to prevent the expansion of coverage to someone who contracts for alterations or repairs to the property and is dissatisfied with the quality of the work. "The insurer by this exclusion intended to prevent the expansion of coverage under the policy to insuring the quality of a contractual undertaking by the insured or someone authorized by him." *Husband v. Lafayette Ins. Co.*, 635 So.2d 309, 311 (La.App. 5 Cir. 1994). This makes eminent sense and argues against Nova's interpretation. As discussed above, exclusionary clauses must be strictly construed against the

insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured. *See Vappi & Co.*, at 431-432, 204 N.E.2d at 275.  I find the faulty workmanship exclusion language does not apply on the facts of this case.

Unfortunately for Fidelity this does not end the analysis.  As discussed above, the policy provides that Nova will not pay for rain damage to the building's interior unless "the building . . . first sustains damage by *a Covered Cause of Loss* to its roof . . . through which rain enters". *Nova Policy*, at p. 37 (emphasis added). While I do not agree with Nova that the faulty workmanship exclusion language applies, I do agree that the rain limitation does apply thus not qualifying the damage as being "covered" as that term is used in the policy.

*Whether the Nova policy affords coverage for the theft/vandalism claim in December 4, 2008.*

Under the terms of the policy, vandalism and theft claims are not covered if the building was vacant for more than 60 consecutive days and if the repairs and renovations have not been undertaken.  The loss occurred on September 6, 2008 and the building was immediately rendered vacant.  On October 6, 2008 Nova denied coverage for the loss and on December 4, 2008 the vandalism/theft occurred.  Fidelity argues that the owners were ready, willing, and able to repair the building but were prevented from doing so because of Nova's wrongful refusal to pay the claim.  Until the claim was paid they had no monetary ability to pay the significant cost of the repairs.  In addition they point to the requirements from the Town of Clinton for engineered renovation plans which made the 60 day requirement impossible to meet.

Fidelity makes two arguments in support of coverage.  They ask the court to adopt a rule that prevents an insurer from invoking the vacancy exclusion if the insurer's wrongful denial of the claim is the reason for the vacancy.  Secondly, they argue that the vandalism/theft damages

13

are recoverable as reasonably and foreseeably flowing from Nova's breach of contract for failure to pay the water damage claim. Fidelity admits that they have been unable to find any case law supporting or rejecting this position. Their argument in support of such a rule is compelling and would cause to hold an insurance company accountable for a wrongful coverage denial. The flaw in the argument is, of course, that the denial of coverage by Nova based upon the rain limitation was not wrongful. As discussed above, I find that the damages to the interior of the building was not a Covered Cause of Loss as that term is used in the policy thus making negating Nova's argument that the failure to pay was wrongful.

### *The remaining counts in the Complaint*

Fidelity has moved for summary judgment on the first two counts of their complaint both of which seek declaratory judgment. Count One seeks a declaration that there was coverage for the damage to the interior of the building and losses due to the vandalism/theft of December 4, 2008. Count Two seeks the same declaration for the loss of business income. I can find no discussion in the papers of whether or not there was coverage for the claim for loss of business income. In Count 2 of the complaint, Fidelity avers that the policy provided coverage for the loss of business income that was sustained during the period of the restoration. They further aver in 43 that "The suspension of operations at the High Street property was caused by a 'covered cause of loss' within the meaning of the policy." If the issue in Count 2 is whether Fidelity's claim for lost business income is dependent upon a finding that the interior damage was a "Covered Cause of Loss," then I can proceed to decide that issue consistent with my decision above. This appears to be the case based upon the Plaintiffs' Complaint and the lack of any contrary arguments by either counsel. Accordingly, I am ruling that summary judgment should

issue for Nova on count 2 that a declaration enter that the losses to the interior of the building, for the theft and vandalism of December 4, 2008, and for the loss of business income were not "Covered Causes of Loss" as that term is used in the policy. I make this declaration based upon the rain limitation and not the faulty workmanship exclusion.

Nova has moved for summary judgment on all counts. Nova has supplied nothing in the record in support of their motion on Counts 3 and 4. Count 3 of the Plaintiffs' complaint alleges that Nova breached the insurance contract by not paying the claims submitted by the Knowles, the result of which was that the Knowles were unable to continue their commercial landlord business and lost the property to foreclosure. This theory of recovery is again dependent upon whether there was coverage for the loss. Since I have found that there was no coverage, the Plaintiffs' breach of contract claim must likewise fail.

The plaintiffs" negligence count (Count 4) alleges that Nova failed to reasonably investigate and adjust the claims. They aver that Nova was aware that the plaintiffs were relying upon the Nova policy to fund the repairs from the storm and to replace the rental income. (Plaintiffs" Complaint, at ¶58). They further allege that Nova breached its duty to the Knowles by failing to reasonably investigate and adjust their claims. This position is badly undermined by their opposition to Nova's motion. In their argument in opposition to Nova's requested summary judgment on their Chapter 93A claim, Fidelity goes to great lengths to point out how quickly Nova moved to deny their claim. Fidelity also points out the unusual timing of this claim. This loss occurred on September 6, 2008. Within 30 days, Nova had hired 2 engineers, one coverage lawyer, two outside adjusters, and referred this matter to its corporate president because of the potential adverse impact on Nova's financial interests. Also within this 30 day

15

period, Nova denied the claim in its entirety. Fidelity suggest that the speed and intensity of this effort, coupled with the unusual attention of corporate (ie non-claim) interests, is further evidence of Nova's unfair and deceptive trade practice. (*Fidelity Cooperative Bank's Opposition to Nova's Motion for Summary Judment and Supporting Memorandum of Law with Request for Oral Argument* (Document No. 32), at p. 10.

Neither party has expended a lot of effort in support of their position on the negligence claim. This count appears to again rely upon whether there was coverage for the loss and seeks consequential damages for Nova's alleged failure to act on the claim in a timely manner. Since I have found that there was no coverage, Nova's failure to pay in a timely manner is of no consequence since they were under no obligation to pay. Summary judgment shall issue for Nova on count 4.

Finally, count 5 of Fidelity's complaint seeks monetary damages under Chapter 93A, the Commonwealth's consumer protection statute. Their complaint alleges that Nova denied the claim before properly investigating, failed to adequately explain its coverage position, and failed to respond to communications from the Plaintiffs seeking documentation of their coverage position, all of which constitute an unfair or deceptive act or practice under Chapter 93A. Plaintiffs' Complaint, at ¶¶ 62-66. In their memorandum in opposition to Nova's motion for summary judgment, they change their focus significantly. Fidelity now alleges that Nova was improperly influenced to deny the claim because of the poor financial performance of this group of insurance policies. These policies were part of a program marketed by Breed's Hill Insurance Agency, an independent insurance agency not a party to this case, and underwritten by Nova. Fidelity claims that Nova's decision to deny coverage was not based upon the terms of the policy

16

t rather upon the poor financial performance of the Breed's Hill program.  Assuming those facts to be true, does this create a contested issue of fact even though I have already found that there was no coverage due to the rain limitation?  Fidelity cites to no authority for the proposition that they are entitled to monetary damages if the insurance policy excluded coverage but that the claim was denied for a different, unrelated reason, *i.e.*, that the policy was part of a financially underperforming group.

## Conclusion

The Motion for Summary Judgment of Defendant Nova Casualty Company (Docket No. 26) is ***allowed*** and Fidelity Co-operative Bank's Motion for Summary Judgment (Docket No. 27) is ***denied***.  Judgment shall enter for Nova Casualty Company.

       **/s/ Timothy S. Hillman**
**TIMOTHY S. HILLMAN**
**UNITED STATES MAGISTRATE JUDGE**

## **Appendix A**

### *The Nova Policy: Relevant Policy Provisions*

The Nova Policy provides in pertinent part as follows:

**A. Coverage**

    We will pay for direct physical loss of or damage to Covered Property at "covered locations" caused by or resulting from any Covered Cause of Loss.

....

**B. Covered Causes of Loss**

    Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:

      1. Excluded in Section **C.** Exclusions; or

      2. Limited in Section **D.** Limitations.

....

**C. Exclusions**

    **1.**    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

        ....

        **f. Water**

          ....

          **(3)**    Water or water-borne material, that backs up or overflows from a sewer, drain or pump;

        ....

    **3.**    We will not pay for loss or damage caused by or resulting from any of the following, Paragraphs **3.a.** through **3.c.** But if an excluded Cause of Loss that is listed in Paragraphs **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

        ....

        **c. Plan, Design Faults**

        Faulty, inadequate or defective:

        **(1)** Planning, zoning, development, surveying, siting;

        **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        **(3)** Materials used in repair, construction, renovation or remodeling; or

> > **(4)** Maintenance;
> > of part or all of any property on or off your "covered locations".
>
> ....
>
> **D. Limitations**
>
> > The following limitations apply to the coverage form and endorsements, unless otherwise stated:
> >
> > **1.**   We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.
> > ....
> >
> > **c.**   The interior of any building or structure, or to business personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
> >
> > > **(1)**   The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
> > >
> > > **(2)**   The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.
>
> ....
>
> **H. Loss Conditions**
>
> > ....
> >
> > **6. Vacancy**
> > ....
> >
> > > **b.**   **Vacancy Provisions**
> > >
> > > > If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
> > > >
> > > > **(1)**   We will not pay for any loss or damage caused by any of the following even if they a Covered Causes of Loss:
> > > >
> > > > > **(a)** Vandalism;
> > > > > ....
> > > >
> > > > > **(e)** "Theft";

*Nova Policy*, at pp. 17, 32, 33, 36, 37, and 42-43.